Abraham E. Havkins, Esq.
Attorney ID: AH 0976
**HAVKINS ROSENFELD RITZERT & VARRIALE, LLP**
One Battery Park Plaza, 6th Floor
New York, New York 10004
(212) 488-1598
Attorneys for Plaintiff
Good Fight Entertainment, LLC

| | |
|---|---|
| GOOD FIGHT ENTERTAINMENT, LLC,<br><br>                                      Plaintiff,<br><br><br>                        vs.<br><br>ST. PAUL FIRE & MARINE INSURANCE COMPANY,<br><br><br><br>                                      Defendant. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br><br><br>**CIVIL ACTION NO.**<br><br>**COMPLAINT** |

Plaintiff, GOOD FIGHT ENTERTAINMENT LLC ("Good Fight"), by and through its attorneys, Havkins Rosenfeld Ritzert & Varriale, LLP, by way of its complaint against defendant, ST. PAUL FIRE AND MARINE INSURANCE COMPANY ("St. Paul") alleges as follows:

## PARTIES

1.      Plaintiff Good Fight is a New Jersey limited liability company located in Monroe Township, New Jersey.  Its members are residents of New Jersey.

2.      Defendant St. Paul ("Travelers") is a large United States insurer. Defendant provided plaintiff with insurance during all relevant times set forth in this complaint.

{03417415.DOCX / }

## NATURE OF THE ACTION

3.    This is a declaratory judgment complaint by an insured, Good Fight, against its insurer, Travelers.  Good Fight seeks a declaration that it is covered for two actions.  One in North Carolina and the other in Canada.  Good Fight also seeks the attorneys' fees it has incurred in defending itself in those two complaints, together with the fees of this action.  Travelers' conduct in this dispute has been outrageous.  As a result, plaintiff also seeks punitive damages.

4.    Good Fight is a reluctant plaintiff.  As the Court will see, Good Fight scrupulously followed the internal appeal procedures prescribed by the defendant. But despite its representation that Travelers is an insurance company "that cares.  Travelers takes on the risk and provides the coverage you need…", Travelers has proven to be anything but a company "that cares". www.travelers.com.  It has abandoned its insured in two actions that are clearly covered by the insurance policies it issued.  It failed to abide by its own procedures, applicable New Jersey law and even allowed the person who made the original decision to deny the claim to also decide the appeal.  Its actions demonstrate the abundant bad faith that merits an award of punitive damages.

## JURISDICTION AND VENUE

5.    Plaintiff is a Limited Liability Company with its principal place of business in New Jersey.  All of its members are residents of New Jersey.

6.    Defendant is a Minnesota corporation with its principal place of business in Connecticut.

7.    The amount in controversy exceeds $100,000.

2

{03417415.DOCX / }

8.     A federal court has subject matter jurisdiction over controversies involving disputes between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. 1332. This standard is met here.

9.     Venue is proper in New Jersey. The cause of action arose in this state, plaintiff resides in the state and defendant conducts business in this state.  Defendant has conceded that New Jersey law is applicable.

## BACKGROUD OF CLAIM

10.     Good Fight is a small company engaged in managing musical bands. It is also engaged in the ownership of musical labels, manufacturing and selling clothing and operating an art studio. Good Fight was founded by Paul Conray and Carl Severson in 2010.  Good Fight specializes in the hard rock/metal genre of the music business.

11.     Defendant Travelers is an American insurance company. It is the second largest United States commercial property insurer and the third largest personal lines insurer in the country.

12.     Non-party Ascend Insurance Brokerage is a division of SC Insurance Holdings LLC ("Ascend"). Ascend was and is Good Fight's insurance broker.

## THE TWO LAWSUITS

13.     In 2017-2018, Good Fight was sued in two separate actions, one in North Carolina and the second in Canada.  Both actions allege occurrences that took place during the terms of the Travelers insurance policies and within the coverage locations.  The North Carolina action alleges that the plaintiff in that action, Megan Osborn, was injured at a concert when an

3

audience member dove off the stage directly onto her.  She alleges that Good Fight is liable because it managed, promoted and booked the band Terror that was performing.  (the "North Carolina Action").   The Canada Action makes similar allegations. (the "Canada Action"). Travelers was Good Fight's insurer. Both actions were properly and timely submitted to Travelers on, or about, August 16, 2017 and April 30, 2018, respectively (the "Actions").

14.    Notwithstanding that Good Fight was not present at either concert and, indeed, had absolutely nothing to do with how the concerts were conducted, Travelers disclaimed coverage based on the "Described Work Exclusion Endorsement".  That provision "precludes coverage for injury… that result from your work described in the Coverage Summary" See Exhibit 1; October 19, 2018 Travelers Denial of Appeal.   Described Work "means live performances" along with other enumerated activities.  There were no allegations in either action that stated, or are even implied, that Good Fight performed any work or services that could be considered a "live performance" or in any way related to lives performances. Good Fight did not have any connection with either event. Notwithstanding that Good Fight had absolutely nothing to do with either concert, was not even present at either concert and "regardless of whether the allegations are proven to be true", Travelers decided that the Exclusion was applicable and barred coverage for both claims.  See Exhibit "1".  In short, despite being told verbally and in writing that there were no such allegations in either action, and even if there were they could not possibly be true, Travelers unilaterally and without any basis decided that both complaints alleged such conduct.  It then upheld that decision on appeal.

15.    Travelers is mistaken. Travelers misconstrues its own exclusion and ignores the plain fact that Good Fight was not even present at either concert.  It had nothing to do with the actual live performance.   As such, the exclusion for work performed by it, or for it, at a "live

4

performance" cannot possibly be applicable. Travelers has nonetheless maintained its original misguided and incorrect approach throughout its Internal Appeals Process. As such, Good Fight had no alternative but to commence this litigation.

## AS AND FOR A FIRST CAUSE OF ACTION
### ("Breach of Contract")

16.     Plaintiff incorporates paragraphs "1" through "15," of the complaint as if fully set forth herein.

17.     The Canadian action filed in the Ontario Superior Court of Justice between Miranda Stirling and various defendants including Good Fight is attached as Exhibit 2 (the "Stirling Complaint"). The Stirling Complaint alleges that Good Fight "consist of a record label, band management, sports management, a clothing line and an art studio". Exhibit 2. It further alleges that Good Fight is responsible "for the management of the Defendant, The Story So Far". Id. The Complaint alleges that the plaintiff was injured when "John Doe", dove from the stage and landed on the plaintiff, Miranda Stirling.

18.     The alleged negligence of Good Fight, in the Stirling Complaint, includes, but is not limited to:

- Failure to warn other defendants of the damages that were anticipated to occur during the concert;

- Employment of incompetent agents to provide security;

- It knew or ought to have known that the security personnel were incompetent;

- It failed to provide proper training and instruction to its staff; and

- It employed incompetent security.

{03417415.DOCX / }

19.     The other action was brought by Megan Osborn. Osborn brought suit against Good Fight, the band Terror and its members, the owner and operator of the North Carolina theatre and the company providing staffing, security and promotions in North Carolina, Rowan County. See Exhibit 3.

20.     The claim is that Good Fight, "at all relevant times, was managing, promoting and booking Defendant Terror, a hardcore punk band that played concerts nationally and internationally, including in Mechlenburg County, North Carolina." Id.

21.     The Complaint further alleges that the members of the band Terror "arranged, choreographed, designed, performed, derived income from, and produced, in part or whole, a live concert at the Neighborhood Theatre venue…" Id.

22.     It is further alleged that, "As a direct and  proximate cause of Defendant Terror's, particularly Defendant Vegel's 'willful and wanton acts' an audience member dove into the air, off the stage, flipped in the air and landed directly onto" the plaintiff.  Id.

23.     The complaint alleges that there were no warnings of this activity, even though the defendants knew or should have known that this dangerous condition would exist.  More specifically, the complaint alleges that the negligence consisted of:

- Failing to inspect the premises;
- Failing to keep the premises in a safe condition;
- Failing to properly supervise or train security personnel;
- Failing to adequately staff the event;
- Failing to stop the dangerous activity;

6

- Failing to warn of the dangerous activity;

- Encouraging an obviously dangerous activity;

- Failing to warn the venue and patrons;

- Failing to have any knowledge of the band;

- Allowing the situation to get out of control; and

- Maintaining, operating, booking, performing and promoting the "concert" in a manner that was careless, negligent and deceptive.

24.      Good Fight is not alleged to have performed or even been present at the concerts. Many of the specific allegations refer to actions that took place before the concert. For example, "promoting and booking" the band was not a live performance. And neither is failing to inspect, supervise, train, warn or maintain the site or personnel. Indeed, none of the alleged negligent conduct of Good Fight was the negligent performance by it of a "live performance".

25.      There are no allegations that Good Fight's "live performance" resulted in plaintiff's injuries.

26.      Accordingly, the designated work exclusion is inapplicable.

27.      Travelers issued two policies applicable to the loss. Policy Number ZPP-1ON52162-14-47 was effective from May 28, 2014 – May 28, 2015. Exhibit "4". The second policy was ZPP-1ON52162-15-47 was effective from May 28, 2015- May 28, 2016. Exhibit "5". The two policies will be referred to as the "Policies". The Policies are identical except for their time periods.

28.      The Policies provide a total limit of $2 million and a personal injury limit of $1 million.

7

29.   The policies provide the following coverage:

Bodily injury and property damage liability.

We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:

- Happens while this agreement is in effect; and

- Is caused by an event.

\* \* \*

Bodily injury means any physical harm, including sickness or disease, to the physical health of other persons.

We'll consider any of the following that: happens at any time to be part of such physical harm, sickness, or disease, if it results in or from such physical harm, sickness or disease:

- Mental anguish, injury, or illness;

- Emotional distress.

- Care, loss or services, or death.

\*\*\*

Event means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**Right and duty to defend a protected person.** We'll have the right and duty to defend any protected person against a claim or suit for injury or damage covered by this agreement. We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent. But we won't have a duty to perform any other act or service.

**Injury or damage** means:

8

- Bodily injury, personal injury, or advertising injury; or

- Property damage

Id.

30.     The Policies also include "Exclusions".  Travelers relies solely on the Described Work Exclusion.  The coverage summary describes "your work" from which injury must not "result" as follows:

"Your work" means "live performances…"

31.     In short, an injury that results from Good Fight's "Live Performance" at either concert is excluded from coverage.  Neither complaint contains such an allegation.

32.     In or about August, 2017 and April, 2018 Good Fight was sued in two actions, the one in North Carolina and the one in Canada.  Ascend, on behalf of Good Fight, submitted both claims to Travelers for coverage. Travelers denied coverage.  It even refused to defend either action.

33.     Travelers' decision lacks any basis.  It ignores New Jersey law, the language of the policy and the true facts.  Travelers claims that the two actions are not covered because of the Described Work Exclusion. This Exclusion is inapplicable given that Good Fight's work was not a "live performance".

34.     Travelers has a duty, under applicable New Jersey law, to go beyond the complaints' allegations when the true facts are brought to its attention.

35.     The true facts, had they been considered, would have revealed that Good Fight had nothing to do with live performances, did not perform, provide or receive any services or

work at the concerts and did not receive any revenue as a result of its non-involvement within either event.

36.    Travelers was repeatedly informed of these true facts.

37.    Had Travelers considered the nature of the claims asserted against Good Fight and the actual facts, rather than to inaccurately describe the complaints to construct fortresses against coverage, it would have readily agreed that both claims were covered.

38.    Travelers, under applicable New Jersey law, could not ignore known information, even if contrary to the allegations in the complaints.

39.    Travelers was repeatedly informed by Good Fight's broker, and others, verbally and in writing, that Good Fight's work did not include any "part or role" in connection with any "live performance".

40.    Travelers therefore knew that the Exclusion was inapplicable because neither plaintiffs' injuries could possibly have "resulted" from Good Fight's "live performance".

41.    The duty of an insurer to provide and pay for a legal defense is exceedingly broad. If any claim is even potentially covered, New Jersey law requires insurers to defend the entire lawsuit.  The claims in both lawsuits are potentially covered, even though meritless.

42.    All questions and doubts are resolved in favor of coverage. An insured's reasonable expectations of coverage can even override the plain meaning of the policy language, especially an exclusion. But here, the Exclusion is clear.  Injury that "results from" work provided at a live event is excluded from coverage.  Good Fight did not provide any services at a

10

live event.  Indeed, it was not even present at either concert.  Good Fight did not perform or carry out a live performance. Good Fight did not provide services at a live event.

43.     Good Fight reasonably expected coverage here. Coverage is only precluded where the injury "results from" the insured's "live performance". Good Fight did not engage in any "live performances, appearance, special events and/or motion picture/video production."

44.     As such, it is impossible for either of the underlying plaintiffs' injuries to have resulted from Good Fight's "live performance" work.

45.     In fact, both underlying complaints contain numerous allegations that do not require Good Fight's live performance.

46.     Nowhere does either Complaint allege that Good Fight was present and negligent at the concert itself.  Or that such an imaginary scenario was the sole cause of either plaintiffs' injuries.

47.     The "Your Work" Endorsement Exclusion is inapplicable to these claims.

48.     Defendant Travelers has refused to defend and indemnify Good Fight in either of the two suits of which it was notified by Good Fight's representatives.

49.     The two actions are covered under the Travelers insurance policy.  Travelers has breached the terms of its insurance policy agreement with Good Fight, its insured, by refusing to defend and indemnify Good Fight.

11

50.     Travelers is liable for past, current and future defense fees in both Actions. In addition, should a verdict or settlement result, Travelers must pay such verdict or settlement pursuant to the terms of its insurance policies.

## SECOND CAUSE OF ACTION
### (Breach of Contract – Failure to Timely and Properly Respond to Good Fight's Appeal)

51.     Plaintiff incorporates paragraphs "1" through "50," of the complaint as if fully set forth herein.

52.     Plaintiff timely appealed Travelers' refusal to defend and indemnify Good  Fight in the two actions brought against it to the Internal Appeal Panel.

53.     Travelers' cavalier, belated and perfunctory denial of those appeals, without giving any consideration to plaintiff's arguments, is a plain breach of the appellate procedure set forth in its insurance policies as well as New Jersey law.

54.     On September 28, 2018, Good Fight commenced an appeal with Travelers Internal Appeals Committee.  On October 19, 2018, Travelers "claim department" purportedly responded.

55.     The purported response was procedurally deficient, contrary to Travelers' policies and procedures, contrary to New Jersey law and untimely.

56.     Travelers insurance policy provides, as required by New Jersey law, an Internal Appeals Panel. Instead of providing a response from that Panel, the response was provided by the person who denied one claim in the first place. In deciding the appeal, Joe Pistritto mistakenly relied solely on the plaintiff's allegations, notwithstanding his acknowledgement that

Travelers "did not imply that the allegations are true they are used to review coverage." See Exhibit 1. Mr. Pistritto was wrong. Plaintiff's allegations are not the sole basis to decide whether coverage exists. The actual facts matter as well.

57.     Under New Jersey law, internal appeals are to be conducted by a three person independent panel that is not responsible for claims payments. Instead of referring the appeal to that body, Mr. Pistritto reviewed the claim himself and reported his decision. Not a word of Good Fight's actual appeal was even considered.

58.     That response was rejected by Good Fight since it did not set forth the Internal Appeals Committee's findings. See Exhibit 6.

59.     On February 4, 2019 the Internal Appeals Committee finally and perfunctorily reported that "After reviewing all available information and full deliberation, we have decided to uphold the coverage decision made by the claim department". See Exhibit 7. None of the information reviewed was described, the "full deliberation" was not discussed, none of the members of the Panel were named or described and the procedures it utilized were not even mentioned.

60.     New Jersey law requires that insurers decide and report their decision within ten (10) business days of the appeal being filed. As such, the Appeal should have been considered and the Internal Affairs Committee's decision reported back by mid-October, 2018. The response was not provided within ten (10) business days as required by New Jersey law.

61.     The Internal Affairs Committee was not granted additional time to provide a response. Its February 4, 2019 decision -  well over three (3) months after its decision was due - was untimely.

62.     Implementing regulations of the New Jersey Department of Insurance including Regulations 11:25-2.4; 11:25-2.5 and 11:25-2.3 were all violated.

63.     Having not timely and properly followed New Jersey law and the terms of its policy, Travelers is estopped, precluded and denied any opportunity to uphold its claim handling and the Appeal must be deemed to have been granted.

### THIRD CAUSE OF ACTION
#### ("Bad Faith")

64.     Plaintiff incorporates paragraphs "1" through "63," of the complaint as if fully set forth herein.

65.     From the inception of the two claims set forth herein, to date, Travelers has acted in bad faith. It has distorted the plain meaning of its own Exclusion, ignored contrary information to the complaints' allegations, took nearly four (4) months to improperly decide an appeal, failed to investigate the losses, did not conduct any interviews, did not speak to the insureds or even address any of the arguments of Good Fight or its attorneys or insurance broker. Most fundamentally, Travelers has failed to recognize that a complaint may make multiple inconsistent allegations and that if a single one is covered the complaint must be defended.

66.     A review of the perfunctory initial denial letter makes clear that Travelers intentionally and in bad faith distorted the plain and obvious meaning of both its policies and the

14

{03417415.DOCX / }

complaints.  See Exhibit 8.  Those decisions were upheld first by the Claims Department and then by the Internal Appeals Panel.

67.     In the initial letter, Travelers Claim Professional Marie Rose wrote that the plaintiff is seeking to recover damages for injuries she sustained **"while attending a live concert"**.  She then claims that the claim is excluded under the terms of the "Described Work Exclusion Endorsement" because "the concert, in question was a 'live performance'."  This conclusion reflects an intentional misreading of both the complaint and the insurance policy.  See Exhibit 8.

68.     Ms. Rose acknowledges that the plaintiff "is alleging that Good Fight Entertainment, LLC ("Good Fight") was responsible for managing, promoting and booking the musical band that was performing at the time of the alleged incident."  "Promoting and booking" the band, by definition, had to occur prior to the "live performance".   That allegation, acknowledged by Travelers, is a sufficient basis to provide coverage.

69.     The plaintiffs in both actions seek to hold Good Fight liable not because of what it did (or did not do) at the "live performances" but as a result of "promoting and booking" the particular band to perform. And that is exactly what the Policy was intended to cover.

70.     Ms. Rose however 'misreads' the Exclusion.  Coverage is excluded for "injury or damage or medical expense that result from your work described in the Coverage Summary". The Coverage Summary describes the insured's work ("your work") that must cause the injury as **"Live Performances"**.

15

71.     In other words, Good Fight must be engaged in a "Live Performance" that causes "injury" for coverage to be denied. Not only was Good Fight not engaged in a "Live Performance" it was not even present at either concert.

72.     But even if Good Fight was at the "Live Performance", the Exclusion is inapplicable. The Exclusion does not simply apply to all accidents at a "Live Performance" as Ms. Rose mistakenly claims. The Exclusion only applies when an injury "results" from Good Fight's "work" which is described as "Live Performances".

73.     Put simply, coverage is denied for injuries that result from Good Fight's "Live Performance". Neither lawsuit comes close to making that allegation. Both lawsuits allege that Good Fight was responsible for promoting and booking the band which is simply not true. Neither lawsuit alleges that Good Fight was itself engaged in a "Live Performance". Indeed, neither lawsuit alleges that Good Fight was even present at the "Live Performance". And Good Fight informed Travelers that it was not.

74.     Travelers' position that the concert in question was a "live performance" is irrelevant. Travelers' position that the "DESCRIBED WORK EXCLUSION eliminated all coverage for the pending lawsuit" is simply wrong. The Exclusion is far narrower then Travelers contends. The provision excludes injuries that result from Good Fight's live performance. The Exclusion does not bar coverage for any claim related to a "live performance". Only if Good Fight was performing live and as a result someone was injured would this Exclusion apply. But Good Fight was not performing live, it was not even there.

75.     Travelers bad faith continued. It did not investigate the losses. It failed to interview the insured. It did not timely decide the appeal. It did not dispute the true facts as

16

described to it.  Its decision simply followed Ms. Rose's original, misguided approach.  It did not respond or address any of Good Fight's arguments.  Indeed, it first submitted a response from the Claim Professional who had originally denied the second claim and whose position at Travelers included deciding whether a claim was covered.

76.     Travelers completely ignored its insured's interests.  It considered only its own interests.  Travelers failed to comply with New Jersey law, follow New Jersey procedure or even its own policy language.

77.     Travelers intentionally and in bad faith denied the claims and in bad faith rejected the Appeal.  Travelers is therefore liable for punitive damages.

**WHEREFORE**, plaintiff requests Judgment as follows:

1. On the first cause of action for a Judgment declaring that the two underlying complaints are covered under the insurance policies that Travelers issued to Good Fight;

2. On the first cause of action declaring that plaintiff is entitled to recovery of its attorneys' fees incurred in defending the two underlying actions;

3. On the first, second and third causes of action declaring that plaintiff is also entitled to recovery of its attorneys' fees expended in bringing this action;

4. On the third cause of action declaring that plaintiff is also entitled to recovery of punitive damages in the amount of, at least, $1 million; and

5. For such other and further relief that the Court deems to be appropriate.

Dated: New York, New York
       July 25, 2019

{03417415.DOCX / }

**HAVKINS ROSENFELD RITZERT**
**& VARRIALE, LLP**

By: _____
          Abraham E. Havkins, Esq.
*Attorneys for Plaintiff*
GOOD FIGHT ENTERTAINMENT LLC
One Battery Park Plaza, 6th Floor
New York, New York 10004
(212) 488-1598

18

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify that to my knowledge, the matter in controversy is not the subject of any other action pending in any Court or of a pending Arbitration proceeding.

To my knowledge, no other action or Arbitration procedure is contemplated.

I have no knowledge at this time of the names of any other party who should be joined in this action.

I hereby certify the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: New York, New York
      July 25, 2019

                         HAVKINS ROSENFELD RITZERT
                         & VARRIALE, LLP

                         By: _____
                               Abraham E. Havkins, Esq.
                         *Attorneys for Plaintiff*
                         GOOD FIGHT ENTERTAINMENT LLC
                         One Battery Park Plaza, 6th Floor
                         New York, New York 10004
                         (212) 488-1598
                         File No. 10672-100